UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JEROME DRUMMOND  :
              :
v.            :   C.A. No. 15-00426-WES
              :
SIEMENS INDUSTRY, INC.  :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Defendant's Motion for Summary Judgment. (ECF No. 34). Plaintiff objects. (ECF No. 38). A hearing was held on October 21, 2019.

**Background**

Plaintiff Jerome Drummond previously worked for Defendant Siemens Industry, Inc. in a sales capacity from May 20, 2002 until the termination of his employment on or about January 15, 2014. Defendant contends that Plaintiff's at-will employment was lawfully terminated for poor work performance described as a "years-long decline in performance, sales, and commissions after 2008." (ECF No. 44 at p. 6). Plaintiff disputes that characterization and contends that he was the victim of unlawful retaliation and bad faith opportunistically intended to deprive him of future sales commissions. Plaintiff asserts three Massachusetts common law claims.[1] He alleges a violation of the public policy exception to the employment at-will doctrine (Count II) as enunciated in DeRose v. Putnam Mgmt. Co., Inc., 496 N.E.2d 428 (Mass. 1986).

---

[1] Plaintiff has conceded that his Rhode Island Whistleblower Protection Act claim (Count I) is not viable because it is predicated on the reporting of alleged violations of Massachusetts state law. See R.I. Gen. Laws § 28-50-3(4); and ECF No. 1 at ¶ 103. Thus, I recommend that Defendant's Motion be GRANTED as to Count I.

He alleges an opportunistic breach of contract claim (Count III) as enunciated in <u>Fortune v. Nat'l Cash Register Co.</u>, 364 N.E.2d 1251, 1257 (Mass. 1977). Finally, he alleges a breach of the covenant of good faith and fair dealing (Count IV) as enunciated in <u>Gram v. Liberty Mut. Ins. Co.</u>, 429 N.E.2d 21, 29 (Mass. 1981).

Defendant contends that Rhode Island law applies to this case and that none of Plaintiff's common law claims are viable under Rhode Island law. Plaintiff counters that Massachusetts law applies and, alternatively, that even if Rhode Island law applies, "it is well established in Rhode Island that 'virtually every contract contains an implied covenant of good faith and fair dealing between the parties.'" (ECF No. 40 at p. 64, <u>citing</u> <u>Dovenmuehle Mortg., Inc. v. Antonelli</u>, 790 A.2d 1113, 1115 (R.I. 2002)). Thus, Plaintiff argues that his claims are equally viable under Rhode Island law.

Before the Court can undertake a Rule 56 review of the factual record, these preliminary legal issues must be decided to determine the legal materiality of the facts under review. Further, for efficiency reasons, the Court has determined that a two-step report and recommendation process is warranted to allow Chief Judge Smith to undertake a <u>de novo</u> review and reach his final decision on these legal issues before the factual record is fully analyzed, if necessary. Thus, this preliminary report and recommendation will address the disputed choice of law issue, and Plaintiff's alternative argument that choice of law is immaterial because his common law claims are legally viable under both Massachusetts and Rhode Island law.

**Discussion**

**A.     Choice of Law**

As noted, the parties disagree on whether Massachusetts or Rhode Island substantive law governs this diversity action. A federal court sitting in diversity must apply the choice of

law rules of the forum state.  See Baker v. St. Paul Travelers, Ins. Co., 595 F.3d 391, 392 (1st Cir. 2010).  Thus, this Court applies Rhode Island's choice of law rules.

Plaintiff alleges contractual theories of recovery.  (See ECF Nos. 1, 1-1 and 40 at pp. 31-37).  This Court has recently observed that "[t]he Rhode Island Supreme Court has not adopted a definitive analysis for contract-based claims."  Alifax Holding v. Alcor Scientific, Inc., 357 F. Supp. 3d 147, 155 (D.R.I. 2019); see also Crellin Tech., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994) (noting that Rhode Island law on contract choice of law principles is "sparse and leaves the proper choice of law test for contract cases shrouded in uncertainty.").  Rhode Island "has applied both the lex loci contractus [law of the place of contracting] doctrine and an interest-weighing test."  Alifax, 357 F. Supp. 3d at 155.[2]  Thus, the Court will apply both tests.

First, as to the place of contracting test, the applicable law is that of the state where the "last act that forms the contract is performed."  Crellin, 18 F.3d at 5 (citing Tim Hennigan Co. v. Anthony A. Nunes, Inc., 437 A.2d 1355, 1357 (R.I. 1981)); see also  DeCesare v. Lincoln Benefit Life Co., 852 A.2d 474, 484 (R.I. 2004) (the law of the state where the contract was executed governs).

Here, Plaintiff testifies by Affidavit that the May 10, 2002 Employment Offer Letter setting forth the terms of his employment with Defendant, as well as his agreed-upon compensation and sales incentive plan (commissions and performance bonus), was "accepted, signed, and entered into by [him] in [Defendant's] Canton, Massachusetts headquarters/office." (ECF No. 40-5 at ¶ 1).  Plaintiff was offered and accepted an Account Executive position on

---

[2]    Compare DeCesare v. Lincoln Benefit Life Co., 852 A.2d 474, 484 (R.I. 2004) (noting that for contract-based claims, "the law of the state where the contract was executed governs"), with Gordon v. Clifford Metal Sales Co., 602 A.2d 535, 539 (R.I. 1992) (applying interest-weighing analysis).

the New England District Sales Team covering Connecticut, Rhode Island and Massachusetts. (ECF No. 40-4 at pp. 3-4). Plaintiff testifies that he signed and accepted the Employment Offer Letter in front of his then-supervisor W. Allen Sawyer in Sawyer's office within Defendant's Canton, Massachusetts headquarters/office. (ECF No. 40-5 at ¶ 1). Thus, since Plaintiff accepted and signed the Employment Offer Letter in Massachusetts, the lex loci contractus doctrine dictates that Massachusetts law should apply. See Alifax, 357 F. Supp. 3d at 157.

Defendant describes Plaintiff's testimony as "self-serving" and uncorroborated. (ECF No. 44 at p. 1, n.1). Defendant argues (in a footnote) that the facsimile headers on the Employment Offer Letter suggest that it was actually signed by Plaintiff in Rhode Island where he resides and then transmitted to Defendant's Massachusetts location. Id. However, the header stamps are inconclusive, and the accuracy of the transmittal dates, times and locations indicated are unsubstantiated. In addition, although arguably self-serving, Plaintiff's sworn assertion that he accepted and signed the Employment Offer Letter in Mr. Sawyer's Office in Canton, Massachusetts is uncontroverted. Defendant also conceded at the hearing that it has been unable to locate Mr. Sawyer and thus has no ability to obtain his recollection. Thus, it is undisputed on this record that Plaintiff accepted and signed Defendant's Employment Offer Letter in Massachusetts and thus its laws would govern applying the "place of contracting" choice of law rule.

Although a closer call upon which reasonable minds could differ, the interest-weighing approach to choice of law also leads this Court to apply Massachusetts law. The relevant factors as set forth in this Court's recent Alifax decision are:

    (a)    the place of contracting;

    (b)    the place of negotiation;

(c) the place of performance;

(d) where the contract's subject matter is located; and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

357 F. Supp. 3d at 157 (citing Restatement (Second) of Conflict of Laws § 188). The Court in Alifax indicated that the following policy factors may also be considered:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other interested states and the relative interests of those states in determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

Alifax, 357 F. Supp. 3d at 157 (citing Restatement (Second) of Conflict of Laws § 6).

While Plaintiff is a Rhode Island resident who worked out of Defendant's Rhode Island office,[3] Massachusetts also has significant contacts with the parties and a more relevant interest in the events giving rise to this litigation. Defendant supervised Plaintiff out of its Canton, Massachusetts office. Plaintiff accepted and executed his Employment Offer Letter in the Massachusetts office. Defendant's New England District Sales Team was headquartered in and managed out of the Massachusetts office. Plaintiff performed a significant portion of his sales

---

[3] While relevant, the fact that Plaintiff paid Rhode Island taxes and applied for and collected unemployment benefits through Rhode Island is not enough to tilt the balance in favor of Rhode Island since the subject matter of this case overwhelmingly relates to Massachusetts activities. See Krause v. UPS Supply Chain Sol., C.A. No. 08-cv-10237-DPW, 2009 WL 3578601 at *15, n.8 (D. Mass. Oct. 28, 2009).

activities in Massachusetts, and his allegations in this case primarily center around sales efforts for contracts with Massachusetts municipalities.

On balance, and when measured against the backdrop of the relevant interest-weighing considerations, Massachusetts has a more significant relationship to the parties and the issues at play in this litigation. Rhode Island's more generalized interest here in providing recourse for a resident Plaintiff/employee is outweighed by the more particularized interests of Massachusetts. This case includes allegations that Plaintiff's superiors based in Massachusetts engaged in bad faith behavior to prevent Plaintiff from earning commissions on contracts ultimately consummated with Massachusetts municipalities. It also includes allegations that Plaintiff's superiors based in Massachusetts retaliated against him for reporting claimed violations of Massachusetts public procurement laws. If ultimately substantiated, Massachusetts surely has a greater policy interest than Rhode Island in the determination of those issues. Further, as to predictability and certainty, it should come as no surprise to an employer located in Massachusetts and doing business with Massachusetts municipalities that Massachusetts law would apply to its relationship with an employee involved in such work in Massachusetts. Accordingly, the interest-weighing approach also leads to the application of Massachusetts law.

While this Court has concluded that Massachusetts substantive law should apply to Plaintiff's claims, it will also address Plaintiff's alternative argument that choice of law is immaterial and his common law claims are equally viable under Rhode Island law.[4] Recognizing the potential that Chief Judge Smith, conducting a <u>de novo</u> review of this matter,

---

[4] At the hearing, Plaintiff's counsel suggested that the Court certify this legal question to the Rhode Island Supreme Court. Plaintiff did not propose certification in his brief and has not formally moved for certification. Given the age of this case, the delay inherent in the certification process and the lack of any ambiguity in relevant Rhode Island law, I recommend that the informal request for certification be denied.

could ultimately conclude that Rhode Island law applies, the state of Rhode Island law on wrongful discharge is potentially relevant and dispositive. Accordingly, for efficiency reasons, this legal issue is also addressed below.

The record is undisputed that Plaintiff was employed by Defendant for an indefinite term and thus was an at-will employee. In contrast to Massachusetts, Rhode Island has never recognized any type of common law wrongful discharge action. See Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1188 (1st Cir. 1996); Pacheo v. Raytheon Co., 623 A.2d 464, 465 (R.I. 1993). The law in Rhode Island is clear "that employees who are hired for an indefinite period with no contractual right to continued employment are at-will employees subject to discharge at any time for any permissible reason or for no reason at all." Bartlett v. Am. Power Conversion Corp., C.A. 05-084-ML, 2006 WL 2709404 at *4 (D.R.I. Sept. 20, 2006) (citing Delsignore v. Providence Journal Co., 691 A.2d 1050, 1052 n.5 (R.I. 1997)); see also Volino v. Gen. Dynamics, 539 A.2d 531, 532 (R.I. 1988). Simply put, the Rhode Island Supreme Court has never recognized or noted in dicta that it might recognize the common law wrongful discharge claims brought by Plaintiff in Counts II, III and IV.[5] See Pacheo, 623 A.2d at 465 (stating that "[i]t is not the role of the courts to create rights for persons whom the Legislature has not chosen to protect.'"). In fact, Plaintiff has brought a statutory claim under Rhode Island's Whistleblower Protection Act (a statutory exception to the at-will employment rule) but now concedes that such claim (Count I) is not applicable to his facts as a matter of law.

---

[5] Plaintiff argues that his claims are viable in Rhode Island because it is well established under Rhode Island law that "virtually every contract contains an implied covenant of good faith and fair dealing between the parties." Dovenmuehle Mortg., Inc. v. Antonelli, 790 A.2d 1113, 1115 (R.I. 2002). While true, Rhode island has never (despite the opportunity to do so, see, e.g., Volino, supra) applied or suggested the possibility of applying, the implied covenant in the at-will employment context. Thus, Plaintiff's argument is legally unsupported.

Thus, if Rhode Island substantive law were to be applied in this case, Plaintiff would fail to state any legally viable claims under Rhode Island law.

**Conclusion**

For the foregoing reasons, I recommend that Defendant's Motion be GRANTED as to Count I and, as to Counts II, III and IV, that the Court find that Massachusetts substantive law applies. If this choice of law recommendation is accepted and adopted by Chief Judge Smith, Defendant's Rule 56 Motion and argument that Plaintiff has not presented any trial-worthy issue of wrongful discharge must be considered and adjudicated based on the existing briefing and competing Local Rule Cv 56 statements of undisputed and disputed facts. If this choice of law recommendation is not accepted and adopted, I alternatively recommend that Defendant's Motion be GRANTED in its entirety and that final judgment be entered in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 26, 2019