UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JEROME DRUMMOND  :
:
v.  : C.A. No. 15-00426-WES
:
SIEMENS INDUSTRY, INC.  :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Defendant's Motion for Summary Judgment. (ECF No. 34). Plaintiff objects. (ECF No. 38). A hearing was held on October 21, 2019. For the following reasons, I recommend that Defendant's Motion be DENIED.

**Background**

Plaintiff Jerome Drummond previously worked for Defendant Siemens Industry, Inc. in a sales capacity from May 20, 2002 until the termination of his employment on or about January 15, 2014. Defendant contends that Plaintiff's at-will employment was lawfully terminated for poor work performance described as a "years-long decline in performance, sales, and commissions after 2008." (ECF No. 44 at p. 6). Plaintiff disputes that characterization and contends that he was the victim of unlawful retaliation and bad faith opportunistically intended to deprive him of future sales commissions. Plaintiff asserts three common law claims, and this Court has recently held that Massachusetts law is applicable. (ECF No. 59).[1] He alleges a

---

[1] Plaintiff has conceded that his Rhode Island Whistleblowers' Protection Act claim (Count I) is not viable because it is predicated on the reporting of alleged violations of Massachusetts state law. See R.I. Gen. Laws § 28-50-3(4); and ECF No. 1 at ¶ 103. Thus, I recommend that Defendant's Motion be GRANTED as to Count I.

violation of the public policy exception to the employment at-will doctrine (Count II) as enunciated in DeRose v. Putnam Mgmt. Co., Inc., 496 N.E.2d 428 (Mass. 1986). He alleges an opportunistic breach of contract claim (Count III) as enunciated in Fortune v. Nat'l Cash Register Co., 364 N.E.2d 1251, 1257 (Mass. 1977). Finally, he alleges a breach of the covenant of good faith and fair dealing (Count IV) as enunciated in Gram v. Liberty Mut. Ins. Co., 429 N.E.2d 21, 29 (Mass. 1981).

**Discussion**

**A.     Standard of Review**

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the discovery, disclosure materials and any affidavits show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). A fact is material only if it possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010). The evidence must be in a form that permits the court to conclude that it will be admissible at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986). "[E]vidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Vasconcellos v. Pier 1 Imports (U.S.) Inc., C.A. No. 06-484T, 2008 WL 4601036, at *3 (D.R.I. Apr. 28, 2008). The "fact that there are conceivable inferences that could be drawn in Plaintiff's favor does not mean that those

inferences are 'reasonable' enough to justify sending the case to the jury." Tavares v. Enter. Rent-A-Car Co. of R.I., No. CV 13-521 S, 2016 WL 6988812, at *2-3 (D.R.I. Nov. 29, 2016).

In ruling on a motion for summary judgment, the court must examine the record evidence in the light most favorable to the nonmoving party; the court must not weigh the evidence or reach factual inferences contrary to the opposing party's competent evidence. Tolan v. Cotton, 572 U.S. 650, 660 (2014). In employment cases, summary judgment is appropriate when the party opposing the motion "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000); Bonilla v. Electrolizing, Inc., 607 F. Supp. 2d 307, 314 (D.R.I. 2009). The motion must be denied if there is sufficient evidence from which a reasonable jury could infer that the adverse employment action was based on discriminatory animus or that the employer's articulated reason is a sham and the true reason is discriminatory. Trainor v. HEI Hosp., LLC, 699 F.3d 19, 28 (1st Cir. 2012); Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996).

**B.     Analysis**

This case is factually complex, and the parties have submitted lengthy, competing Local Rule cv 56 fact statements that total nearly 300 individual paragraphs. (ECF Nos. 35, 41, 42, 45, 46 and 50). However, the parties' respective summary judgment arguments are straightforward. Defendant contends that Plaintiff was lawfully fired due to declining sales performance. It also posits that his Fortune claim fails because Plaintiff cannot show that he was "on the brink" of closing the New Bedford and Springfield projects in issue. Finally, it contends that his public policy claim fails, in part, because Plaintiff himself engaged in the very same activity he now claims he believed was a violation of Massachusetts procurement law.

Plaintiff does not dispute that his individual sales numbers were in decline. However, he argues that those numbers do not tell the whole story and that "[b]usinesses just do not fire big producers like [me] merely because they have a few years of reduced sales as [Defendant] would have you believe." (ECF No. 40 at p. 3). He argues that Defendant's purported basis for termination, i.e., poor sales performance and failure to timely meet the goals of a performance improvement plan ("PIP"), are implausible, and that there are sufficient facts upon which a reasonable juror could find that he was the victim of a bad faith, opportunistic discharge and wrongful termination for reporting violations of Massachusetts procurement law. These are primarily issues of fact that are material and genuinely disputed.

A brief summary of the factual background is helpful to put these competing arguments into context to calibrate the lens through which they must be viewed. Plaintiff worked for Defendant in a sales capacity from 2002 until 2014. He became a Sales Team Leader in 2005, and it is reasonable to infer that it was a promotion and that thereafter he had both individual and team sales responsibilities. Plaintiff's job did not involve selling a product, like insurance or automobiles, where performance results might be fairly evaluated on a weekly or monthly basis. He was selling energy performance contracts to governmental entities. These are essentially a financing tool which allows an entity to use future energy cost savings to fund current projects that improve operational efficiency and conserve energy. The parties agree that these contracts are complex and often involve a combination of products and services. The parties also agree that the sale of a performance contract involves several steps that can take months or even years. Since the potential customers are governmental entities, the process includes public notice of a request for proposals, the submission of competing vendor proposals, a letter of award, and then the negotiation and execution of a more detailed letter of intent which

is eventually memorialized into a formal written contract. A project is "booked" as a sale by Defendant after the customer issues a letter of intent. The salesperson earns part of the commission when the project is booked and additional commissions are paid over the life of the contract.

It is undisputed that Plaintiff's individual sales performance and compensation decreased starting in 2008. However, he argues that it was largely due to him focusing on team goals at the direction of his supervisor. While Defendant disputes this point, it concedes that sales team performance increased during the relevant period. For instance, it is undisputed that the New England team met its sales plan goal under Plaintiff's leadership every year from 2007 through 2013 and was ranked in the top three of teams. Ultimately, Plaintiff was placed on a performance improvement plan ("PIP") on September 9, 2013. (ECF No. 39-21). It was primarily directed at alleged deficiencies in Plaintiff's Connecticut sales results and his performance as Team Leader. The PIP included several requirements including adding $3,000,000 in "secured LOIs" in Connecticut. The PIP was in place through December 9, 2013 but was extended, over Plaintiff's objection, to January 13, 2014. Plaintiff was fired on January 14, 2014. The parties dispute the reasonableness of the PIP's terms and Plaintiff's satisfaction of them. In part, Plaintiff contends that adding $3,000,000 in LOIs within ninety days was not reasonable or achievable given the lengthy sales process involved.

Plaintiff claims that his termination was unlawfully tainted by retaliatory and opportunistic motives. As with most such cases, Plaintiff points to no "smoking gun" direct evidence of unlawful motive. Rather, he relies primarily on inferences he claims can reasonably be drawn from timing and other circumstantial evidence. As this Court recently observed in Optical Works and Logistics, LLC v. Sentinel Ins. Co., Ltd., 2020 WL 1480723 at * 3 (D.R.I.

March 26, 2020), summary judgment is a "drastic remedy" which deprives the parties of a jury as fact-finder as embodied in the Seventh Amendment. Thus, "the law requires the Court to draw all reasonable inferences against the moving party and that the Court grant summary judgment if the undisputed facts and inferences that flow from them allow for only one reasonable conclusion in favor of the movant." Id. The law also requires the Court to view the facts in the light most favorable to the non-moving party. Id. Here, it is impossible on this record to adopt Defendant's summary judgment arguments without drawing inferences and/or viewing facts in its favor. Thus, summary judgment is not appropriate.

The issues presented in this case are primarily ones of motive and intent which are fact driven. At first blush, Defendant's portrait of the routine termination of a declining performer has some facial appeal. However, there are several undisputed facts about the PIP process and the timing of the termination which support reasonable inferences of unlawful motive and/or animus. A few examples are illustrative. First, as to timing, it is undisputed that the PIP came on the heels of concerns raised by Plaintiff to his supervisor about state procurement law compliance. (ECF No. 42 at ¶¶ 158-159, 236). Whether or not those concerns were genuine or subsequently infected the PIP process and termination decision, are fact issues. Second, it is undisputed that the New Bedford contract was a significant one for Defendant and that Plaintiff was heavily involved in a sales capacity. Plaintiff also stood to earn commissions on the contract in future years, and not paying those commissions increased Defendant's profitability and profits. Id. at ¶ 255. Plaintiff's New Bedford sales efforts dated back to 2008 and resulted in the issuance of an RFP on May 29, 2013 and a letter of award to Defendant on December 16, 2013. Id. at ¶ 145-146, 150. When Plaintiff was placed on the PIP on September 9, 2013, his sales manager anticipated that the New Bedford contract would be awarded to Defendant

"relatively soon thereafter." Id. at ¶ 240. It was awarded on December 16, 2013. Id. at ¶ 150. Furthermore, on December 9, 2013, the PIP was extended from December 13, 2013 to January 13, 2014. Id. at ¶ 199. Even though one of the purported reasons for extending was to allow for Plaintiff's supervisor to meet more with him, they met only once on December 16, 2013. Id. at ¶ 200, ECF No. 45 at ¶ 200. Because the PIP was extended before the New Bedford award, there is a permissible inference that the extension may have been motivated more by the desire to keep Plaintiff on board until the award was made rather than for the stated purpose of additional supervisory meetings and feedback.

Second, as to the PIP process, it is undisputed that Plaintiff was placed directly on the PIP without any prior formal warnings. Although this is permissible under the PIP policy, id. at ¶ 177, Defendant's HR consultant testified that this was the first of about thirty PIPs she was involved with that went straight to the third PIP level without prior progressive discipline. Id. at ¶ 204. It is also undisputed that Plaintiff's 2013 performance evaluation was conducted earlier than usual and before the compilation of year-end sales results. Id. at ¶ 168-170. Further, despite its importance, Plaintiff's progress on the New Bedford contract was not mentioned in his 2013 review. Id. at ¶ 176. Finally, it is undisputed that Plaintiff's supervisor had decided to terminate Plaintiff's employment prior to the January 13, 2014 meeting with Plaintiff and before Plaintiff had the opportunity to present his updated sales funnel. Id. at ¶ 225.

While these illustrative undisputed facts are, of course, not dispositive of a finding of an unlawful discharge, they permit reasonable inferences of unlawful motive that could be drawn in Plaintiff's favor. In order to grant summary judgment to Defendant, it would be necessary to ignore these undisputed facts or draw inferences from them in Defendant's favor. These are ultimately factual questions that are reserved to the trier of fact.

**Conclusion**

For the foregoing reasons, I recommend that Defendant's Motion for Summary Judgment (ECF No. 34) be GRANTED solely as to Count I and DENIED as to Counts II, III and IV.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 14, 2020